# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| ATELE P., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. CV 20-02165-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Atele P. ("Plaintiff") filed applications for Disability Insurance Benefits and Supplemental Security Income in December 2016, alleging disability beginning November 25, 2015. See Dkt. 18, Administrative Record ("AR") AR 396-432.[1] After being denied by initial determination, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on June 17, 2019, see AR 224-43.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ issued an unfavorable decision on June 26, 2019. See AR 39-61. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date. See AR 44. At step two, the ALJ determined that Plaintiff had the severe impairments of "degenerative disc disease of the cervical and lumbar spine and fibromyalgia." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 48.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with some additional limitations. See AR 49. At step four, the ALJ found that Plaintiff could perform past relevant work as a medical biller and claims processer as actually and generally performed, and a composite job comprised of medical biller and office manager as actually performed. See AR 53-54. Accordingly, the ALJ denied benefits. See AR 54.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of Social Security benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

### III. DISCUSSION

The sole issue Plaintiff raises on appeal is an argument that the ALJ improperly discounted her subjective symptom testimony. See Dkt. 19 at 4.

At the hearing, Plaintiff testified that she had severe right shoulder pain; "off and on" daily headaches and stomach pains; pain and numbness in her fingers, hands, and wrists; pain radiating from her back to her feet; and sharp, throbbing pain all around her feet and on the bottom of her feet. AR 227-28. She could lift no more than ten to fifteen pounds. See AR 228. She was incapable of kneeling. See id. She was incapable of withstanding this pain for more than a quarter of a mile of walking, fifteen or twenty minutes of standing, and ten to twenty minutes of sitting. See AR 229-30. At the time of the hearing, she had lived in a shelter for over three months. See AR 231. She woke up daily at six in the morning, did her "exercise" and "stretching," showered, and was required to leave the shelter by eight in the morning. See AR 231-32. After she left the shelter, she would go to her "scheduled appointments" for that day, then go to the library, then work on her "other exercises." AR 233. She attended her appointments by using insurance-covered ride-sharing services. See id. The shelter prepared her meals. See AR 234. She last worked from 2012 to 2015 taking care of her mother. See id. She did not seek other work after her mother died because of injuries sustained during a car accident while her mother was alive. See AR 235.[2]

In her January 2017 function report, Plaintiff reported as follows: Every day, she would say her prayers, read, stretch, do Tai Chi, make breakfast and lunch, go to "treatment," and meditate. AR 483. Her only limitations on

---

[2] Plaintiff described her caretaking job as involving preparing all meals, bathing her mother, housekeeping, dispensing medication, providing transportation, walking one hour, standing two hours, sitting four hours, stooping one hour, and handling objects for one hour. See AR 469.

personal care were that she had difficulty "car[ing] for [her] hair" with her right hand and had trouble washing her back. AR 483. She listed no limitations for dressing. See id. She prepared her own meals every day, including sandwiches, green salads, and smoothies. See AR 484. She performed household chores, including "cleaning, laundry," taking the trash out, and vacuuming. Id. She shopped for groceries two or three times a week, which took about an hour. See AR 485. She went to church every Sunday and attended "group session" every Wednesday. AR 486. Despite these activities, she reported being able to lift no more than five pounds and sit for no more than twenty or thirty minutes. See AR 487. She reported memory loss as she spoke and moved from room to room. See id.

In her June 2017 function report, Plaintiff added that she now had difficulty raising her arms to get dressed and could not wash her back or bend over to wash her feet. See AR 508. She still prepared her own meals every day, although she bought more pre-packaged food. See AR 509. She still went to church every week for three hours at a time. See AR 511. If someone spoke to her, she could not remember what the person said after a few seconds. See AR 512.

The ALJ must make two findings before finding the claimant's pain or symptom testimony not credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citation and internal quotation marks omitted). Second, if the claimant has produced that evidence, and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). If the ALJ's subjective symptom finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ discounted Plaintiff's testimony for at least two reasons. First, the ALJ found that Plaintiff's daily activities were inconsistent with her statements. AR 50. Plaintiff alleged at the hearing that she was incapable of kneeling and could not bear to sit or stand for more than twenty minutes due to pain all over her body. She also claimed she struggled to remember what she was doing or hearing from moment to moment.

Yet Plaintiff engaged in a variety of activities that contradict her claims of total disability. Every Sunday, she attended church for three hours. She practiced Tai Chi. When not at the shelter, she prepared her own meals. At the shelter, she adhered to a daily schedule. She cleaned, did laundry, took out the trash, attended appointments, and went to the library. She needed no assistance in remembering to take care of her personal needs, take her medicine, prepare her meals, or do her other chores. She grocery shopped several times a week for an hour at a time. These activities are patently inconsistent with her allegations of disabling pain and memory loss. See Molina, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). This was a clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.

Second, the ALJ found that Plaintiff's testimony was inconsistent with the objective medical evidence. See AR 50. This finding is also supported by

substantial evidence. Plaintiff testified, for example, that she had difficulty squatting, bending, reaching, and kneeling, and that her memory and concentration were several impaired. Two separate physical examinations in 2017 yielded largely normal findings. See AR 684-86, 818-20. The second examination found that Plaintiff sat and stood with normal posture, sat comfortably throughout the exam, rose to stand without difficulty, walked normally, and got on and off the examining table without difficulty. See AR 818-20. Plaintiff claimed at the hearing that she struggled with walking due to pain, yet her treating physicians generally observed her with a normal gait. See, e.g., AR 1121, 1139, 1169, 1213, 1222. Imaging of Plaintiff's back, pelvis, and shoulder indicated Plaintiff had only mild to moderate findings. See AR 666, 670, 736, 976. A November 2018 examination reflected that Plaintiff was in no discomfort, had full range of motion of the neck, and normal range of motion in the back. See AR 1080. A March 2017 psychological examination reflected that Plaintiff was "not significantly limited" in her ability to maintain concentration and had no limitations on remembering one or two-step tasks. See AR 727. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

    Plaintiff's daily activities and the lack of objective medical evidence were clear and convincing reasons for the ALJ's discounting of Plaintiff's subjective symptom testimony. A different ALJ may have found Plaintiff more credible or weighed the evidence differently, but this Court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Remand is not warranted on this claim of error.

## IV.   CONCLUSION

The decision is the Social Security Commissioner is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: January 26, 2021

　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　DOUGLAS F. McCORMICK
　　　　　　　　　　　　　　　United States Magistrate Judge